## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| JOSEPH KOERNER and FRANK ZACHMAN, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> JOHN COPENHAVER, CANDICE ROGERS, FREDERICK HARDMAN, W. RONALD DIETZ, ESTATE OF ROBERT EDDY, ALLAN W. DEVINE, DALE S. STRASSHEIM, COPENHAVER, INC., dba W.M. PUTNAM COMPANY, and LYNETTE EDDY, ) <br> ) <br> Defendants. ) | Case No.   12-cv-1091 |

# O R D E R  &  O P I N I O N

This matter is before the Court on Defendants John Copenhaver and W. Ronald Dietz's Motion for Judgment on the Pleadings as to Count VI of the Complaint (Doc. 14). Plaintiffs filed a memorandum in opposition (Doc. 17). For the reasons stated below, Defendants' Motion is denied.

### LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), though filed after pleadings are closed, is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *United States v. Wood*, 925 F.2d 1580, 1581 (7th Cir. 1991). Thus, all well-pleaded facts in the complaint are taken as true and all reasonable inferences drawn in the plaintiff's favor. *See Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004). Judgment on the

pleadings will only be granted if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 452 (7th Cir. 1998) (internal quotation marks omitted); *see also Buchanan–Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

## BACKGROUND[1]

On March 23, 2012, Plaintiffs filed their Complaint against multiple defendants, alleging violations of the Employee Retirement Income Security Act (ERISA). Plaintiffs were employees of Defendant Copenhaver, Inc., d/b/a W.M. Putnam Company ("Putnam"). Plaintiffs' claims arise from a stock purchase transaction in 2008, in which Putnam's Employee Stock Ownership Plan ("ESOP"), an employee retirement contribution plan, purchased Putnam shares from former CEO Defendant Copenhaver and then-current CEO Defendant Dietz. Plaintiffs allege that as a result of this transaction, for various reasons that for purposes of the present Motion are irrelevant, they were or will be paid less than the amount to which they are entitled under the plan.

Count VI of the Complaint, the claim challenged in Defendants' Motion, is a claim under § 510 of ERISA, 29 U.S.C. § 1140, based on Plaintiff Koerner's discharge from employment with Putnam. In 2009, Koerner began asking questions about the 2008 stock purchase transaction. Defendant Dietz allegedly "expressed his displeasure" about these inquiries, (Doc. 1 at ¶ 109), but Koerner persisted in

---

[1] The Court draws the facts in this background section from Plaintiffs' Complaint, treating their allegations as true and drawing all reasonable inferences in their favor.

2

his requests for documents and information. Dietz later discussed outsourcing Koerner's job with Koerner's supervisor, Gayln Sweet, and allegedly asked "whether Koerner had learned his lesson yet or would continue to make ESOP inquiries." (Doc. 1 at ¶ 113). Shortly after these discussions, Koerner was discharged. However, less than two weeks later, Koerner was contacted by Sweet, who told him he had "convinced Dietz, Copenhaver, and [Defendant Frederick] Hardman to rehire Koerner," and he returned to work shortly thereafter. (Doc. 1 at ¶ 116).

Still, Koerner continued to inquire into the 2008 stock purchase transaction, and contacted the Department of Labor (DOL) on April 13, 2010. He communicated with the DOL over several months in an attempt to obtain ESOP documents and to encourage them to initiate an investigation. DOL did open an investigation in September 2010, and "[b]ased upon the belief that Koerner was the whistleblower who triggered the DOL audit, Copenhaver, Dietz, and [Kevin Yeazell, who had taken over as CEO,] reactivated the plan to discharge Koerner and outsource his IT services." (Doc. 1 at ¶ 121). Koerner was discharged effective February 23, 2011. Koerner claims this was a retaliatory discharge, and alleges Defendants Putnam, Copenhaver, and Dietz violated ERISA § 510 for discharging Koerner "for exercising his rights," to interfere with his attainment of benefits under the retirement plan, and in retaliation for his whistleblowing.

## DISCUSSION

Defendants Copenhaver and Dietz (hereinafter "Defendants") moved for judgment on the pleadings as to Count VI on two grounds. First, they argue that

3

individuals cannot be liable under ERISA § 510. Second, they argue that Plaintiffs failed to allege sufficient facts to establish a plausible claim against Defendants.

**I. Individual Liability Under ERISA § 510**

ERISA § 510 reads, in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C.A. § 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140. As both parties acknowledge, the Seventh Circuit has not ruled on the question of whether individuals can be liable for violations of ERISA § 510.

Defendants argue that individuals should not be held liable under ERISA § 510, and that only the employer can be liable. In reaching this conclusion, Defendants rely upon the similarities between ERISA § 510 and other retaliation claim statutes, including the Americans with Disabilities Act and Title VII of the Civil Rights Act of 1964. They argue that because these claims are subject to the same burden-shifting analysis, and because some of the language between the statutes is similar, ERISA § 510 should be limited to claims against employers because the other causes of action are. Defendants cite a handful of cases in support of their proposition. Plaintiffs, on the other hand, point to the plain language of the statute and an abundance of cases supporting the conclusion that ERISA § 510 is not limited to claims against employers and that individuals can be found liable.

4

Defendants are correct that the Seventh Circuit has applied the same burden-shifting analysis to ERISA § 510 claims as it applies to other employment discrimination claims. *See Grottkau v. Sky Climber, Inc.*, 79 F.3d 70, 73 (7th Cir. 1996). However, simply because there are similarities between these types of claims does not mean every aspect will be treated the same. The one appellate court opinion Defendants cite does not directly discuss the issue of individual liability. *See Byrd v. MacPapers, Inc.*, 961 F.2d 157, 161 (11th Cir. 1992). Rather, when confronted with an ERISA § 510 claim against both an employer and the insurer of an employee benefits plan, the Court found no liability on the insurer's part, stating "Byrd's retaliatory discharge claim under § 510 of ERISA lies only against MacPapers as her deceased husband's employer." *Id.* This case has been interpreted to mean an ERISA § 510 claim lies only against an employer and that individuals cannot be liable, but it is indirect and unpersuasive authority for such a proposition. Since *Byrd*, multiple circuit courts have held that liability under ERISA § 510 is not limited to employers. *See, e.g.*, *Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1501 n.8 (10th Cir. 1995); *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 421 (4th Cir. 1993) ("In light of the plain language of the section, we cannot agree with the defendants that Congress intended to limit those who could violate § 1140 to employers."); *Tingey v. Pixley-Richards W., Inc.*, 953 F.2d 1124, 1132 n.4 (9th Cir. 1992). Numerous district courts have followed suit. *E.g.*, *Blake v. H-2A & H-2B Voluntary Emps'. Beneficiary Ass'n*, 952 F. Supp. 927, 933 (D. Conn. 1997); *Place v. Abbott Labs., Inc.*, 938 F. Supp. 1373, 1377 (N.D. Ill. 1996).

Turning specifically to individual liability, though Defendants cited four district court opinions in which the courts do explicitly hold that individuals cannot be liable for an ERISA § 510 violation, *Stout v. Health Mgmt. Assocs., Inc.*, CV-10-3080-EFS, 2011 WL 1225575, at *2 (E.D. Wash. Mar. 31, 2011); *Magnus v. St. Mark United Methodist Church*, 10 C 380, 2010 WL 4177614, at *3 (N.D. Ill. Oct. 19, 2010); *Snir v. Am.'s Collectibles Network, Inc.*, 3:09-CV-298, 2010 WL 2389314, at *7 (E.D. Tenn. June 8, 2010); *Gordon v. Am.'s Collectibles Network, Inc.*, 3:09-CV-206, 2010 WL 925785, at *5 (E.D. Tenn. Mar. 8, 2010), this Court respectfully disagrees with such a conclusion. Instead, the Court adopts the reasoning advanced by numerous other district courts in concluding that individuals can be liable for actions that violate ERISA § 510. *See, e.g.*, *Simons v. Midwest Tel. Sales & Serv., Inc.*, 433 F. Supp. 2d 1007, 1012-13 (D. Minn. 2006); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 257-58 (W.D. Va. 2001); *Swanson v. U.A. Local 13 Pension Plan*, 779 F. Supp. 690, 702 (W.D.N.Y. 1991) *aff'd sub nom. Swanson v. U.A. Local 13*, 953 F.2d 636 (2d Cir. 1991).

There are strong reasons why ERISA § 510 should not be read to limit liability to employers. First, the plain language of the statute provides for individual liability. The statute makes it unlawful for "any *person*" to take certain actions, including discrimination, against an employee for improper purposes. 29 U.S.C. § 1140 (emphasis added). The term "person" is defined in the Act, and unsurprisingly includes an "individual." 29 U.S.C. § 1002(9). By using the term "person" instead of the term "employer," which is defined separately in the Act, 29 U.S.C. § 1002(5), it appears Congress intended for individuals whose conduct

6

violates ERISA § 510 to be held liable. Further, because ERISA § 510 is a remedial provision, it is to be liberally construed. *Deeming v. Am. Standard*, 905 F.2d 1124, 1128 (7th Cir. 1990). Finally, as noted above, the weight of authority supports the conclusion that liability under ERISA § 510 is not limited to employers, and can extend to individuals. There is simply no indication that individuals are *per se* immune from liability for violations of ERISA § 510. As individuals, Defendants come within the meaning of "person" in ERISA § 510, and may be liable for conduct that is proscribed by this provision.

**II. Allegation of Facts Sufficient to State Plausible Claim**

Defendants also briefly argue that Plaintiff has "not alleged any facts showing that either Defendant Copenhaver or Defendant Dietz made the decision to eliminate Koerner's position at W.M. Putnam." (Doc. 15 at 6). They claim that the "sole allegation" to this effect is the conclusion that the CEO of Putnam at the time Koerner was discharged "'acted at the direction' of Copenhaver and Dietz." (Doc. 15 at 6).

Defendants have failed to show beyond doubt that Plaintiff cannot prove any facts that would support his claim, as is required for judgment on the pleadings. *See Buchanan–Moore*, 570 F.3d at 827. Taking the facts in the Complaint as true and drawing all reasonable inferences in Plaintiff's favor, it is clear that Plaintiff has adequately stated a claim that Defendants violated ERISA § 510. As discussed above, Plaintiff alleges that Defendant Dietz discussed the outsourcing of his position in 2009 while making a comment about Koerner "learn[ing] his lesson" about making inquiries into the ESOP stock purchase transaction. (Doc. 1 at ¶ 113).

7

Additionally, Plaintiff alleges Dietz directed CEO Yeazell to discharge Plaintiff because of his whistleblowing to the DOL. Even if Dietz did not have the authority to make the final decision to terminate Koerner in 2011, courts that have allowed ERISA § 510 claims against non-employers have recognized that coercing an employer to discharge an employee unlawfully can create liability under this section. *See, e.g., Tingey*, 953 F.3d at 1132 n.4 ("We believe that an insurer who coerces an employer to fire an employee must be covered by [the language in ERISA § 510]."). The Complaint provides sufficient factual allegations for a claim that Plaintiff was discharged or discriminated against by Defendant Dietz for exercising a right under ERISA and the retirement plan or for his providing information to the DOL. Thus, Count VI will not be dismissed against Defendant Dietz.

Although the claim against Defendant Copenhaver is slightly more tenuous, as Copenhaver's level of involvement in employment decisions between 2009 and 2011 is unclear, Defendants have not shown that Plaintiff cannot sustain this claim. Plaintiff alleges Copenhaver stepped down as CEO of Putnam in 2002, but other allegations show his continued involvement in the company, and Plaintiff alleges Copenhaver "was an officer and director of Putnam" at "all relevant times." (Doc. 1 at ¶ 3). Though his precise level of involvement in the company is not stated in the Complaint, taking Plaintiff's allegations that his retaliatory discharge was directed in part by Copenhaver as true, this discrimination and use of influence to coerce Koerner's employer to discharge him for improper reasons could create liability under ERISA § 510. The Court finds Plaintiff has stated sufficient facts to support a

plausible claim for relief, and Count VI will not be dismissed against Defendant Copenhaver.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings (Doc. 14) is DENIED. This case is REFERRED BACK to Magistrate Judge Cudmore for further pre-trial proceedings. IT IS SO ORDERED.


Entered this 5th day of February, 2013.


                                            s/ Joe B. McDade
                                            JOE BILLY McDADE
                                    United States Senior District Judge