# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| JOSEPH KOERNER and FRANK ZACHMAN, | )<br>)<br>) |
| Plaintiffs, | ) Case No. 12-1091 |
| v. | )<br>)<br>) |
| JOHN L. COPENHAVER, CANDICE M. ROGERS, FREDERICK C. HARDMAN, CAROL DIETZ IN HER CAPACITY AS PERSONAL REPRESENTATIVE OF THE ESTATE OF W. RONALD DIETZ, ESTATE OF ROBERT EDDY, Deceased, ALLAN W. DEVINE, DALE S. STRASSHEIM, COPENHAVER, INC., d/b/a W.M. PUTNAM COMPANY, and LYNETTE EDDY, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

# O R D E R  &  O P I N I O N

This matter is before the Court on Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (Doc. 59). The terms of the Settlement are set out in a Settlement Agreement (the "Settlement Agreement"), executed on August 20, 2014.[1] The Court has considered the Settlement, and determined that it is sufficient to warrant the issuance of notice to present and former participants in the Employee Stock Option Plan, whose rights would be affected by the Settlement.

---

[1] Capitalized terms not otherwise defined in this order shall have the same meaning as ascribed to them in the Settlement Agreement.

## Factual Background

Plaintiffs Joseph Koerner and Frank Zachman filed this action in March 2012. The lawsuit alleges that the six individual Defendants breached fiduciary duties to the W.M. Putnam Company's ("Putnam" or the "Company") Employee Stock Option Plan ("the ESOP") by engaging in or approving a prohibited transaction.

The transaction in question concerns Defendants Copenhaver and Dietz's sale of 60,000 shares of the Company's common stock to the ESOP. The shares fell in value from 2001 to 2005 and again from 2008 to 2011. On July 23, 2008, Copenhaver and Dietz, sold the block of stock to the ESOP for $3.4 million. The transaction was financed by the Company, which borrowed $3.4 million from a commercial bank and loaned the cash to the ESOP, which paid the selling shareholders the full purchase price. The ESOP then executed a promissory note payable to the company for the full amount it borrowed plus interest. The promissory note was secured by the 60,000 shares of Putnam stock it purchased, and was payable over 10 years. The ESOP made installment payments from deductible contributions to the ESOP each year.

The Complaint primarily challenges two aspects of the transaction. First, it alleges that the purchase price the ESOP paid to Defendants was too high because it was based upon a valuation of the Company developed using inaccurate data and unreasonable future cash flow projections. Second, it alleges that a subsequent amendment to the transaction removed key provisions put in place to protect the

value of pre-July 2008 shares. The Complaint alleges that the approved transaction originally included a put price protection plan that was designed to protect the interests of plan participants who held shares of employer stock prior to July 23, 2008. Under these distribution rules, plan participants entitled to a cash distribution for shares allocated prior to July 23, 2008 were to receive the greater of the stock's fair market value or $51.50. However, all stock allocated after July 23, 2008 was to be valued at the stock's fair market value at the time of distribution. The amendment allegedly removed the floor-price of $51.50, and the cash distribution price per share for grandfathered participants quickly dropped below the purported floor price.

Plaintiffs allege five causes of action based on this transaction. They include claims for breach of fiduciary duty under ERISA section 404, for violation of the prohibited transaction statute under ERISA sections 406 and 408, for co-fiduciary liability under ERISA section 406, and for violation of the anti-cutback rule under ERISA section 204(g). They seek, on behalf of the ESOP, a constructive trust and other monetary relief against Defendants. Plaintiff Koerner brought a sixth claim against three Defendants – John L. Copenhaver, Carol Dietz in her capacity as personal representative of the Estate of W. Ronald Dietz, and the Company–for retaliatory discharge under section 510 of ERISA.

Defendants have denied liability for each of Plaintiffs' claims. They argue that they complied with their ERISA duties with respect to the transaction. Defendants hired an independent trustee for the ESOP, Robert Eddy, and gave him authority to both determine whether to proceed with the transaction and negotiate

the price on behalf of the ESOP. Eddy retained an independent valuation firm and independent legal counsel to aide him in those tasks, and concluded that the transaction was in the best interests of and fair to the ESOP and its participants. Defendants also deny that there was ever any agreement to provide a form of fixed price protection. Finally, Defendants Copenhaver, Dietz, and the Company deny liability for violation of section 510 of ERISA and argue that Plaintiff Koerner's position at the Company was eliminated.[2] Defendants also brought counterclaims for defamation and false light invasion of privacy against Plaintiff Koerner.

After engaging in document discovery throughout 2012, the parties began to engage in settlement discussions. Their first settlement conference with former Magistrate Judge Nan Nolan in Chicago was unsuccessful. The parties then engaged in a period of settlement discussions with former Magistrate Judge Byron Cudmore. Those discussions were interrupted by the Company's Chapter 11 bankruptcy filing. Once the bankruptcy stay was lifted, the parties resumed settlement discussions without the involvement of Judge Cudmore. The proposed Settlement resulted from these discussions.

## TERMS OF THE SETTLEMENT

The Settlement Agreement provides for a payment of $650,000, inclusive of attorneys' fees for Plaintiff's Counsel, to be deposited into a settlement account by Defendants' Insurers within fourteen days of final approval, on the condition that $650,000 is available within the $1.0 million coverage limits under the relevant

---

[2] The Company filed for Chapter 11 Bankruptcy on October 28, 2013, which stayed the Sixth Cause of Action. Plaintiff Koerner filed it as a Proof of Claim against the Company in Bankruptcy Court.

4

insurance policy. If less than $650,000 is available within the coverage limit, the settlement consideration is to be the larger of $640,000 or the funds remaining within Defendants' insurance policy.

Plaintiffs' counsel may apply for an award of attorneys' fees and costs from the Settlement Fund, with fees not to exceed $197,994 and costs not to exceed $55,422. They may also apply for an incentive award for Plaintiffs not to exceed $7,500 in the aggregate. The Settlement Agreement provides that Plaintiff Koerner will receive $2,500 in settlement for his ERISA Section 510 retaliation claim. The remainder of the settlement is to be distributed to all participants in the ESOP whose accounts had vested as of July 23, 2008.

In exchange, the Settlement provides for general mutual releases between the Plaintiffs and the Defendant, as well as their attorneys, successors, assigns, and related parties. It is conditioned on the Court's entry of a Bar Order, which will dismiss all claims with prejudice and effectively prevent Plaintiffs and other ESOP participants from bringing similar claims against any of the Defendants in the future and Defendants from bringing similar claims against Plaintiff Koerner in the future.

## DISCUSSION

### I. *Court Approval of ERISA Settlements Brought by Plaintiffs in Their Representative Capacity*

The parties have submitted this Settlement to the Court for approval even though the action was not brought as a class action pursuant to Rule 23 or as a

shareholder derivative action pursuant to Rule 23.1. Rules 23 and 23.1 are the only rules of civil procedure that require court approval of settlements. *See* Fed. R. Civ. P. 23(e), 23.1(c). However, the unique derivative nature of ERISA claims brought pursuant to § 502(a)(2) convinces the Court that approval of the settlement is necessary to protect the interests of all plan participants and ensure that the settlement has a binding and preclusive effect on all plan participants.

Plaintiffs have brought this lawsuit pursuant to ERISA § 502(a)(2). Section 502(a)(2) is a statutory provision that authorizes a beneficiary to bring a civil action against a fiduciary for violations of ERISA on behalf of the plan as a whole rather than in an individual capacity. *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985). The plain language of ERISA does not require that plaintiffs bring fiduciary duty claims on behalf of a class. Rather, it allows "the Secretary [of Labor], or [] a participant, beneficiary or fiduciary" to bring a "civil action . . . for appropriate relief under § 1109 of this title." 29 U.S.C. § 1132(a)(2); *see also Waldron v. Dugan*, No. 07 C 286, 2007 WL 4365358, *5-7 (N.D. Ill. Dec. 13, 2007).

Although parties bringing claims pursuant to ERISA § 502(a)(2) need not include class allegations, courts have held that plaintiffs bringing claims pursuant to it must "take procedural steps to ensure the protection and adequate representation of absent plan participants." *See Coan v. Kaufman*, 457 F.3d 250, 257 (2d. Cir. 2006). In *Coan*, the Second Circuit contemplated that plaintiffs could "take . . . steps to become a bona fide representative of other interested parties" by filing a class action under Rule 23 or by making a good-faith effort to join other participants parties under Rule 19. *See id.* at 258, 261.

Some courts have provided plaintiffs with more flexibility in protecting the interests of absent plan participants. For example, Judge Shadur adopted the reasoning of *Coan*, and held that ERISA actions brought pursuant to § 502(a)(2) "*must* be structured in a manner that will bind *all* Plan participants" *Fish v. Greatbank Trust Co.*, 667 F. Supp. 2d 949, 952 (N.D. Ill. 2009). However, he concluded that there is "no need for the parties to jump through the procedural hoops required for Rule 23 class certification," and instead suggested that "Rule 23.1 would serve as an appropriate vehicle" to bind all Plan participants. *Id.*

In preliminarily approving this Settlement, the Court adopts the reasoning and approach of *Fish*. There are, of course, key differences between shareholder derivative lawsuits governed by Rule 23.1 and ERISA § 502(a)(2). By its own terms, Rule 23.1 only applies to shareholders or members, and it applies when those shareholders or members are making claims that rightfully belong to a corporation or association. *See* Fed. R. Civ. P. 23.1(a). In an ERISA case like this one, plaintiffs bring a claim on behalf of the ESOP rather than a corporation, and they are ESOP beneficiaries, not shareholders. *See Coan*, 457 F.3d at 257. However, the similarities between shareholder derivative lawsuits and ERISA lawsuits brought on behalf of the plan convince the Court that various requirements imposed by Rule 23.1, including court approval of any settlement and notice to plan participants, are appropriate here to provide the necessary reassurance that the plaintiffs are proceeding in a representative capacity rather than an individual capacity.

Therefore, the Court will consider the settlement by applying the standards set by Rule 23.1, which requires court approval for actions that are settled, voluntarily dismissed, or compromised. *See* Fed. R. Civ. P. 23.1(c).

## II.   *Preliminary Approval*

When considering settlements of derivative actions, "[c]ases involving dismissal or compromise under Rule 23(e) of nonderivative cases . . . are relevant by analogy." 7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1839 (3d ed. 2007). Therefore, the Court "must determine that [the] settlement is fair, adequate, and reasonable, and not a product of collusion." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002).

Settlement approval is a two-step processes. "The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval." *Armstrong v. Bd. of Sch. Dirs. Of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F3d 873 (7th Cir. 1998) (internal citation omitted). If the Court grants preliminary approval, "it then proceeds to the second step in the review process, the fairness hearing." *Id.*

At the preliminary approval stage, courts consider five factors: "(1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among effected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and amount of discovery completed." *In*

8

*re AT&T Mobility Wireless Data Svcs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010).

The Court has considered the Plaintiffs' submissions, and concludes that the Settlement is sufficient to warrant notice and a hearing.

First, the Court considers the strength of Plaintiffs' case on the merits against the amount offered in the settlement. *See Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006). This factor weighs in favor of preliminary approval. If Plaintiffs succeed on all six of their causes of action, their claim for damages is approximately $1,750,000. Plaintiffs assert that they would have a reasonable probability of recovering between $800,000 and $1,000,000 if they proceeded to a trial on the merits.

However, continued litigation presents a number of risks. First, of course, is the risk that Plaintiffs will not be successful. Plaintiffs face a number of litigation hurdles. Defendants contest each of the causes of action and have filed counterclaims. The facts giving rise to Plaintiffs' claims are complicated, require the elucidation of experts, and are far from certain. The second risk is that Plaintiffs would be unable to collect on any judgment they could win. The parties assert that Defendants currently only have $675,000 in available fiduciary insurance, and future litigation could exhaust any insurance proceeds that are available. Plaintiffs are currently unaware of the personal assets held by the individual Defendants. The further that litigation progresses, the more difficult Plaintiffs' recovery will be.

Although a settlement of $650,000 would not provide a complete victory to Plaintiffs, it does not need to do so. *See E.E.O.C. v. Hiram Walker*, 768 F.2d 884, 889 (7th Cir. 1985). The Settlement does provide Plaintiffs and Affected Participants with present victory, meaning they will not need to await a result of uncertain and potentially lengthy litigation. *See AT&T Mobility Wireless*, 270 F.R.D. at 347 (noting that "[c]ontinued litigation carries with it a decrease in the time value of money . . ."). According to Plaintiffs, it also provides a recovery that two separate mediators expressed was reasonable.

The second factor, which considers the complexity, expense, and likely duration of continued litigation, also favors preliminary approval. This case presents a number of complex issues, the primary of which is whether the ESOP paid more than fair market value for the 60,000 shares of Company common stock. Determining the fair market value of the Company's stock alone would require substantial expert witness testimony, which the parties estimate would take six to nine months to develop, disclose, and discover. The costs of discovery and future litigation would likely reduce Plaintiffs' recovery, as it would reduce the insurance proceeds available for Plaintiffs.

The third factor is inconclusive. The parties are currently unaware of opposition to the settlement. Because the parties have not sent notice to Affected Participants, it is premature to consider this factor.

The fourth factor weighs in favor of preliminary approval. The fourth factor concerns the opinion of experienced and informed counsel and also considers

whether a proposed settlement appears to be the victim of collusion. *See Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996). Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982). Here, initial evidence suggests that the settlement is the product of arms-length negotiation rather than collusion. The parties assert that the proposed Settlement resulted from informed, extensive arm's-length negotiations, including a private mediation session before the Hon. Nan Nolan of JAMS; a court-ordered settlement conference before Magistrate Judge Byron G. Cudmore with extended settlement negotiations; negotiations with the U.S. Department of Labor which has also filed and settled a claim against the Company in Bankruptcy Court; and informal document discovery and development of expert valuation testimony.

The fifth and final factor, which considers the stage of the proceedings and the amount of discovery concluded, is the only that weighs against preliminary approval. The further parties are into discovery and litigation, the more able the Court and parties are to evaluate the merits of the claims. *See Armstrong*, 616 F.2d at 325. At this stage, the parties have engaged in document discovery, but have not conducted depositions or disclosed expert witnesses. Therefore, substantial questions remain about the merits of Plaintiffs' case as well as Plaintiffs' ability to collect against the personal assets of individual Defendants. However, the parties assert that they engaged in substantial informal discovery for settlement purposes, and were therefore able to realistically analyze and evaluate the merits of the claims.

11

Taken together, these factors favor preliminary approval of the settlement. Therefore, the Court preliminarily finds that the proposed Settlement is sufficiently fair, reasonable, and adequate to warrant sending notice of the Settlement to all participants in the ESOP from January 1, 2008 through December 31, 2012.

**IT IS THEREFORE ORDERED:**

1. <u>Preliminary Findings Regarding Proposed Settlement</u>. The Court preliminarily finds that: (a) the proposed Settlement resulted from informed, extensive arm's-length negotiations, including a private mediation session before the Hon. Nan Nolan of JAMS; a court-ordered settlement conference before Magistrate Judge Byron G. Cudmore with extended settlement negotiations; negotiations with the U.S. Department of Labor which has also filed and settled claim against Putnam in Bankruptcy Court; and two years of document discovery and development of expert valuation testimony; (b) Plaintiffs' Counsel has concluded that the proposed Settlement is fair, reasonable, and adequate; and (c) the proposed Settlement is sufficiently fair, reasonable, and adequate to warrant sending notice (the "Notice") of the Settlement to the all participants in the ESOP from January 1, 2008 through December 31, 2012 (such persons are referred to herin as the "ESOP Participants").

2. <u>Fairness Hearing</u>.  A hearing is scheduled for **January 12**, **2015 at 1:00 pm.** (the "Fairness Hearing") to determine, among other things:

    (a)  Whether the Settlement should be approved as fair, reasonable, and adequate to the Parties as well as to the ESOP Participants;
    (b)  Whether the litigation should be dismissed with prejudice pursuant to the terms of the Settlement;

12

(c) Whether the Notice provided for by the Settlement Agreement was provided and: (i) appropriate and reasonable and constituted due, adequate, and sufficient notice to all persons entitled to notice; and (ii) met all applicable requirements of the Federal Rules of Civil Procedure, and any other applicable law;

(d) Whether the Bar Order provided for by the Settlement Agreement should be entered;

(e) Whether the Plan of Allocation provided for by the Settlement Agreement should be approved;

(f) Whether the application for attorneys' fees, expenses, and settlement administration expenses filed by Plaintiffs' Counsel should be approved;

(g) Whether the application for incentive awards to the Plaintiffs should be approved; and

(h) Whether global resolution comes within the provisions of the Department of Labor regulation on Prohibited Transaction Exemption 2003-39 as subsequently amended, 68 Fed. Reg. 75632 (Dec. 31, 2003).

3. <u>Notice</u>. Proposed form of Notice to Affected Participants is attached to the Settlement Agreement as Exhibit C, which was subsequently modified at the request of this Court and is approved in the amended form attached hereto as Exhibit 1 and incorporated herein by reference. With respect to the amended form of Notice, the Court finds that such form fairly and adequately: (a) describes the terms and effect of the Settlement Agreement and of the Settlement; (b) notifies the ESOP Participants concerning the proposed Plan of Allocation; (c) notifies the ESOP Participants concerning the proposed Bar Order; (d) notifies the ESOP Participants of their right to object to the Settlement and pending motions; (e) notifies the ESOP Participants of their right to intervene in these proceedings and preserve their right to an appeal from a judgment of this Court; (f) notifies the ESOP Participants that Plaintiffs' Counsel will seek from the Settlement Fund awards of attorneys' fees, reimbursement of expenses, and Settlement administration expenses; (g) notifies

13

the ESOP Participants of the time and place of the Fairness Hearing; and (h) describes how the recipients of the Notice may object to any of the relief requested. The Court directs that Plaintiffs' Counsel shall:

(a) File all motions for final approval of the Settlement, the award of attorney fees and expenses, incentive awards and approval of the Plan of Allocation on or before November 14, 2014.

(b) By no later than November 21, 2014, cause the amended Notice, with such non-substantive modifications thereto as may be agreed upon by the Parties, to be sent to each ESOP Participant. Such notice shall be sent by e-mail and first-class mail, postage prepaid, to the Person's last known address as set forth in the records of the Plans. Putnam and/or Defendants shall cause such addresses to be provided to Plaintiffs' Counsel.

(c) Cause the amended Notice to be published on the website identified therein.

At or before the Fairness Hearing, Plaintiffs' Counsel shall file with the Court a statement of timely compliance with the foregoing mailing and publication requirements.

4. <u>Objections to Settlement</u>. Any Affected Participant who wishes to object to the fairness, reasonableness, or adequacy of the Settlement, to the Plan of Allocation, to the Bar Order, to any term of the Settlement Agreement, to the proposed award of attorneys' fees, expenses, or Settlement administration expenses, or to any request for incentive awards for Plaintiffs, may file an Objection in accordance with the procedures set forth in the amended Notice no later than twenty-one (21) days prior to the Fairness Hearing.

5. <u>Appearance at Fairness Hearing</u>. Any objector who files and serves a timely, written objection in accordance with paragraph 4 above, may also seek

14

intervention in the case to preserve their rights to appeal from an adverse decision of the Court and appear at the Fairness Hearing either in person or through counsel retained at the objector's expense. Objectors or their attorneys intending to appear at the Fairness Hearing must follow procedures in the amended Notice. Any objector who does not timely file and serve a notice of intention to appear in accordance with this paragraph and the procedures set forth in the amended Notice shall not be permitted to appear at the Fairness Hearing, except for good cause shown.

6. <u>Service of Papers</u>. Defendants' and Plaintiffs' Counsel shall promptly furnish each other with copies of any and all objections that come into their possession.

7. <u>Additional Filings</u>. Plaintiffs' Counsel shall file no later than seven (7) days prior to the Fairness Hearing any Reply Memorandum to the pending motions and any reply to any objections to the Settlement timely filed.

8. <u>Termination of Settlement</u>. This Order shall become null and void, and shall be without prejudice to the rights of the parties, all of whom shall be restored to their respective positions existing immediately before this Court entered this Order, if the Settlement Agreement is terminated in accordance with Sections 9.1 and 9.3 thereof. In such event, Sections 9.2 and 2.10.7 of the Settlement Agreement shall govern the rights of the parties.

9. <u>Use of Order</u>.  In the event this Order becomes of no force or effect, it shall not be construed or used as an admission, concession, or declaration by or against the Defendants or the Plaintiffs.

10. <u>Continuance of Hearing</u>.  The Court may continue the Fairness Hearing without further written notice.

Entered this 3rd day of November, 2014.

s/Joe B. McDade<br>
JOE BILLY McDADE<br>
United States Senior District Judge